UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC MAAS,<br><br>        Plaintiff,<br><br>    v.<br><br>ZYMBE, LLC, et al.,<br><br>        Defendants. | Case No. 19-cv-07945-JSC<br><br>**ORDER RE: JASON LEAF'S MOTION TO DISMISS FIRST AMENDED CROSS-COMPLAINT; COUNTERCLAIMANTS' MOTION FOR ALTERNATIVE SERVICE OF PROCESS**<br><br>Re: Dkt. Nos. 52 & 53 |
| ZYMBE, LLC and GREG ROTMAN<br><br>        Counterclaimants,<br><br>    v.<br><br>ERIC MAAS, et al.,<br><br>        Counterdefendants. | |

Eric Maas sued Zymbe, LLC ("Zymbe"), Greg Rotman, and other defendants (collectively, "Defendants") in state court, alleging federal and state law claims arising out of Mr. Maas's consulting work for Zymbe. (Dkt. No. 1-1, Ex. 1.)[1] Zymbe and Greg Rotman (together, "Counterclaimants") filed a cross-complaint in state court against Mr. Maas and Jason Leaf alleging various state law claims. (Dkt. No. 53-10, Ex. I at 5.) Defendants removed the underlying action to this Court based on federal question jurisdiction pursuant to 28 U.S.C. §§ 1331, 1446. (Dkt. Nos. 1 at ¶ 9 & 4 at 2.) Now before the Court is Mr. Leaf's motion to dismiss

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

the cross-complaint pursuant to Federal Rules of Civil Procedure 12(b)(1),(2),(5), and (6).[2]  (Dkt. No. 52.)  Also before the Court is Counterclaimants' motion for alternative service of process as to Mr. Leaf.  (Dkt. No. 53.)  After careful consideration of the parties' briefing the Court concludes that oral argument is unnecessary, *see* Civil Local Rule 7-1(b), vacates the hearing scheduled for June 18, 2020, and GRANTS IN PART Mr. Leaf's motion and DENIES AS MOOT Counterclaimants' motion for the reasons set forth below.

**BACKGROUND**

**I.     The Parties**

Zymbe is a Massachusetts limited liability company with its principal place of business outside the state of California.  (Dkt. Nos. 1 & 53-10, Ex. I at 6, ¶ 1.)  Greg Rotman is a California resident, as are Mr. Leaf and Mr. Maas.  (Dkt. No. 53-10, Ex. I at 6, ¶¶ 2-4.)

**II.    Cross-Complaint Allegations**

In November 2015 Zymbe entered into a website development contract with Vystar.  (*Id.* at 8, ¶ 14.)  Mr. Leaf was aware of the contract and Mr. Maas signed the contract on behalf of Zymbe.  (*Id.*)  Six months later, when Mr. Leaf was an owner of Zymbe and Mr. Maas "was Zymbe's sole independent contractor (if not also a co-owner)," Mr. Leaf and Mr. Maas "formed their own company in Wyoming, Azanca, LLC."  (*Id.* at ¶ 15.)  At the time Mr. Leaf and Mr. Maas "were aware that Zymbe's client, NHS, was created for the purpose of generating sales for Vytex (Vystar's liquid latex product), and that NHS had purchased from Vystar a worldwide license for the sales and marketing of Vytex."  (*Id.* at ¶ 16.)

Mr. Leaf was granted ownership shares in NHS "in connection with his anticipated sweat equity to make Vytex sales on behalf of NHS."  (*Id.* at ¶ 17.)  Further, "pursuant to his contract with NHS, [Mr.] Leaf had fiduciary and contractual obligations not to compete with NHS or Zymbe."  (*Id.* at ¶ 18.)  Mr. Maas "had similar obligations, as when he joined Zymbe as a consultant it was with the understanding that he would be providing website development, hosting, and maintenance services for NHS, including NHS's website."  (*Id.*)

---

[2] Mr. Leaf and Counterclaimants have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c).  (Dkt. Nos. 10 & 45.)

2

In May 2017 Mr. Leaf and Mr. Maas caused Azanca "to enter into a Consulting Agreement for ongoing web consulting and sales and marketing services to Vystar." (*Id.* at 9, ¶ 20 (internal quotation marks omitted).) Under the contract, Mr. Leaf "received a royalty for any Vytex sales he made through Azanca—sales that he should have made through NHS." (*Id.* at ¶ 21 (emphasis omitted).) Further, Mr. Leaf and Mr. Maas "were paid directly for webwork for Vystar—work which they should have done through NHS and Zymbe." (*Id.* (emphasis omitted).)

As a result of the contract, over the following nine months "any Vytex sales leads that were generated from the substantial and costly sales work independently performed by NHS (costs for which are estimated to exceed $110,000), were misdirected to [Mr.] Leaf and [Mr.] Maas through Azanca." (*Id.* at ¶ 22.) Thus, while Mr. Leaf and Mr. Maas were working on behalf of Azanca regarding Vytex, they were also receiving compensation from Zymbe for work that should have been done on behalf of NHS regarding Vytex. (*Id.* at ¶¶ 23-24.) Doing so violated Mr. Leaf and Mr. Maas's "contractual non-compete provisions and fiduciary obligations to [Counterclaimants]." (*Id.* at ¶ 25.)

Mr. Leaf and Mr. Maas did not divulge their work for Azanca to Counterclaimants. (*Id.* at ¶¶ 26, 64-67.) Further, Mr. Leaf and Mr. Maas sent allegedly defamatory communications about Mr. Rotman to third parties, including "some of the same individuals [Mr.] Maas alleges he was defamed to [in the underlying action]." (*Id.* at ¶¶ 27-28.)

The first amended cross-complaint asserts the following claims against Mr. Maas and Mr. Leaf: (1) breach of fiduciary duty; (2) accounting; (3) conversion; (4) unjust enrichment-assumpsit; (5) fraud; (6) constructive fraud; (7) interference with contractual relations; (8) "misappropriation of trade secret—statutory"; (9) slander and libel. (Dkt. No. 53-10, Ex. I at 10-20.)

**II.   Procedural History**

The procedural history of the underlying action is detailed in the Court's May 29, 2020 Order denying Mr. Maas's motion for partial summary judgment. (*See* Dkt. No. 58 at 2-3.) The Court incorporates that background here. As relevant to the instant motions, Counterclaimants

3

1    filed the first amended cross-complaint in state court on August 22, 2019.[3]  (Dkt. No. 53-10, Ex. I

2    at 5.)

3            Defendants removed the underlying action to federal court on December 4, 2019.  (Dkt.

4    Nos. 1 & 4.)  The notice of removal did not reference the cross-complaint, nor did Defendants

5    include a copy of the cross-complaint with their removal papers.  (*See generally* Dkt. No. 1.)  On

6    January 23, 2020, Mr. Maas moved for partial summary judgment on his complaint and

7    Counterclaimants' cross-complaint.  (Dkt. No. 15.)  However, Mr. Maas did not include a copy of

8    the operative cross-complaint with his moving papers and the cross-complaint was not otherwise

9    in the record.  The Court issued an order on April 15, 2020, notifying Defendants that it was

10   unclear whether Mr. Leaf was a party to the first amended cross-complaint and notifying them that

11   the Court could not adjudicate Mr. Maas's motion without obtaining consent from Mr. Leaf.  (Dkt.

12   No. 44.)

13           Later that day, Mr. Leaf filed—through Mr. Maas's counsel—a consent form and a motion

14   for permission for electronic case filing.  (Dkt. Nos. 45 & 46.)  Also in response to the April 2020

15   Order, Defendants filed a copy of the first amended cross-complaint and requested "30 days to

16   provide proof of service of process on Mr. Leaf" because they had been "unable to confirm that

17   service of process . . . was effected on Mr. Leaf."  (Dkt. No. 47 at 2.)  The Court granted the

18   request with no further comment.  (*See* Dkt. No. 49 ("The Court grants Defendants' request for 30

19   days to provide proof of service of process on Jason Leaf.").)

20           The Clerk issued summons as to Mr. Leaf on April 23, 2020.  (Dkt. No. 51.)  Two days

21   later, Mr. Leaf filed the instant motion to dismiss and noticed the motion for hearing on June 18,

22   2020.  (Dkt. No. 52.)  On May 8, 2020, Counterclaimants filed the instant motion for alternative

23   service of process and to enlarge time to effectuate service and oppose Mr. Leaf's motion, and

24   noticed the motion for hearing on June 18, 2020.  (Dkt. No. 53.)  Mr. Leaf filed an opposition to

25   Counterclaimants' motion later that same day.  (Dkt. No. 54.)  Counterclaimants' filed their reply

---

[3] The original cross-complaint, filed in state court on May 23, 2019, was submitted in connection with Mr. Maas's motion for partial summary judgment. (*See* Dkt. No. 16-1, Ex. 1 at 215.)  It erroneously captioned Mr. Leaf as "Ryan Leaf." (*See id.*)

4

1 on May 13, 2020.

2 On May 18, 2020, Mr. Leaf filed a notice of non-opposition after Counterclaimants' did
3 not file an opposition to his motion to dismiss. (Dkt. No. 56.) On May 29, the Court issued an
4 order advising the parties that it was considering Counterclaimants' motion to enlarge time to
5 oppose Mr. Leaf's motion and would allow Counterclaimants until June 4, 2020 to file their
6 opposition to Mr. Leaf's motion. (Dkt. No. 59 at 1.) The Court also allowed Mr. Leaf until June
7 11, 2020 to file his reply, if any. (*Id.*)

8 Counterclaimants filed their opposition and Mr. Leaf filed his reply by their respective
9 deadlines.

## DISCUSSION

11 Mr. Leaf moves to dismiss the cross-complaint under Rule 12(b)(1) for lack of subject
12 matter jurisdiction, Rule 12(b)(2) for lack of personal jurisdiction, Rule 12(b)(5) for lack of
13 sufficient service of process, and Rule 12(b)(6) for failure to state a claim. Counterclaimants
14 oppose Mr. Leaf's motion and move for alternative service of process. The Court addresses the
15 parties' motions in turn.

**I.     Motion to Dismiss**

**A.     Rule 12(b)(1)**

18 Pursuant to Rule 12(b)(1), a court must dismiss an action if it lacks jurisdiction over the
19 subject matter of the suit. "The basic statutory grants of federal-court subject-matter jurisdiction
20 are contained in 28 U.S.C. §§ 1331 and 1332. Section 1331 provides for 'federal question'
21 jurisdiction, § 1332 for 'diversity of citizenship' jurisdiction." *Arbaugh v. Y&H Corp.*, 546 U.S.
22 500, 513 (2006) (alteration omitted). "Only state-court actions that originally could have been
23 filed in federal court may be removed to federal court by the defendant." *Caterpillar Inc. v.
24 Williams*, 482 U.S. 386, 392 (1987). The party invoking federal court jurisdiction bears the
25 burden of establishing that subject matter jurisdiction exists. *Kokkonen v. Guardian Life Ins. of
26 Am.*, 511 U.S. 375, 377 (1994).

27 Here, Defendants removed the underlying action based on federal question jurisdiction;
28 specifically, Mr. Maas's claims alleging violations of the Securities Exchange Act of 1933, 15

U.S.C. § 771 and the Securities Exchange Act of 1934, 17 C.F.R. § 240.10b-5. (*See* Dkt. Nos. 1 at ¶ 9 & 1-1, Ex. 1 at 5.) Thus, the Court is satisfied that it has subject matter jurisdiction over the underlying action. *See Vaden v. Discover Bank*, 556 U.S. 49, 60 (2009 (noting that "a suit arises under federal law" for purposes of jurisdiction under 28 U.S.C. § 1331 "only when the plaintiff's statement of his own cause of action shows that it is based upon [federal law]") (alteration in original) (internal quotation marks and citation omitted). The question then is whether the Court also has jurisdiction over the cross-complaint, and more specifically, the counterclaims against Mr. Leaf. It does.

Pursuant to 28 U.S.C. § 1367, courts have "supplemental jurisdiction over:

> all other claims that are so related to the claims in the action within [the court's federal question jurisdiction] that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a); *see also Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005) ("[O]nce a court has original jurisdiction over some claims in the action, it may exercise supplemental jurisdiction over additional claims that are part of the same case or controversy."). However, a court in its discretion "may decline to exercise supplemental jurisdiction over a claim under subsection (a) if:

> (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there other compelling reasons for declining jurisdiction."

28 U.S.C. § 1387(c).

As the Court recognized in its May 2020 Order on Mr. Maas's motion for partial summary judgment, Counterclaimants' claims against Mr. Maas arise out of the same contractual relationship at issue in the underlying action. (*See* Dkt. No. 58 at 8.) Thus, as to Mr. Maas, supplemental jurisdiction over the cross-complaint is proper because the state and federal claims asserted in the underlying action and the state law claims in the cross-complaint "derive from a common nucleus of operative fact." *See United Mine Workers of Am. V. Gibbs*, 383 U.S. 715, 725

6

1   (1966).

2   Counterclaimants argue that the Court also has supplemental jurisdiction over the
3   counterclaims against Mr. Leaf under 28 U.S.C. § 1367.  Counterclaimants assert that the facts
4   alleged in the underlying action and the cross-complaint overlap and concern some of the same
5   conduct, involve the same relationships between the Counterclaimants and Mr. Maas and Mr.
6   Leaf, and occurred during the same time period.  The Court agrees.  Even though Mr. Leaf is not a
7   party to the underlying action, the counterclaims against Mr. Maas and Mr. Leaf are inextricably
8   intertwined and include overlapping allegations that concern matters at issue in the underlying
9   action.  *See, e.g., Exxon Mobil*, 545 U.S. at 564 ("Section 1367(a) applies by its terms to any civil
10  action of which the district courts have original jurisdiction, and the last sentence of § 1367(a)
11  expressly contemplates that the court may have supplemental jurisdiction over additional
12  parties.").  Indeed, Mr. Leaf attests that he has already been deposed as a witness in the underlying
13  action, (*see* Dkt. Nos. 52-1 at ¶ 3 (attesting that on May 22, 2019, he "traveled to Northern
14  California for the deposition and answered hours of questions"), and the cross-complaint alleges
15  that Mr. Maas and Mr. Leaf "broke[ ] into" Mr. Rotman's "business and personal emails . . . to
16  gather . . . evidence" in support of Mr. Maas's claims in the underlying lawsuit," (Dkt. No. 53-10,
17  Ex. I at 7, ¶ 11).  Thus, exercising supplemental jurisdiction over the counterclaims against Mr.
18  Leaf is proper under 28 U.S.C. § 1367 because adjudicating the underlying action will involve
19  consideration of some of the same evidence, parties, and events at issue in the cross-complaint.

20  The out-of-circuit cases cited by Mr. Leaf do not counsel a different result.  Mr. Leaf
21  argues that supplemental jurisdiction does not exist over the cross-complaint claims against him
22  because "ancillary jurisdiction does not extend to impleader claims for contribution or indemnity,
23  unless an independent basis exists for federal court jurisdiction." (Dkt. No. 52 at 9-10 (citing
24  *Aetna Cas. & Surety Co. v. Spartan Mech. Corp.*, 738 F. Supp. 664 (E.D.N.Y. 1990) and also
25  citing *Cook v. United States*, 765 F. Supp. 217, 223 (M.D. Pa. 1991)).)  First, the cross-complaint
26  does not constitute an "impleader claim[ ] for contribution or indemnity"' against Mr. Leaf;
27  instead, the cross-complaint asserts the same 9 counterclaims against both Mr. Leaf and Mr. Maas
28  for their individual conduct.  Second, the authority relied on in *Aetna Casualty—Finley v. United*

7

1  *States*, 490 U.S. 545, 556 (1989) ("[A] grant of jurisdiction involving particular parties does not
2  itself confer jurisdiction over additional [related] claims by or against different parties")—is no
3  longer good law. *See Exxon Mobil*, 545 U.S. at 558 ("*Finley* . . . involved a Federal Tort Claims
4  Act suit against a federal defendant and state-law claims against additional defendants not
5  otherwise subject to federal jurisdiction. Yet all concede that one purpose of § 1367 was to
6  change the result reached in *Finley*.").

7  Mr. Leaf's argument that the Court should, in its discretion, decline to exercise
8  supplemental jurisdiction over the cross-complaint because "state law claims predominate" and
9  there are no federal claims against him is similarly unavailing. (*See* Dkt. No. 62 at 12-13.) The
10 absence of a federal claim against Mr. Leaf is not dispositive to the supplemental jurisdiction
11 analysis. *See In re Pegasus Gold Corp.*, 394 F.3d 1189, 1195 n.2 (9th Cir. 2005) (noting that
12 "[s]upplemental jurisdiction extends over state claims brought against a party even when that party
13 was not subject to the federal claim primarily at issue") (alteration in original) (internal quotation
14 marks and citation omitted). Instead, it is enough that the allegations in the underlying action and
15 the cross-complaint involve many of the same operative facts, concern the same relationships
16 between the parties, and will require consideration of the same evidence.

17 In sum, Counterclaimants have satisfied their burden of demonstrating subject matter
18 jurisdiction. The Court has federal question jurisdiction over the underlying action based on the
19 federal claims in Mr. Maas's complaint, and supplemental jurisdiction over the cross-complaint
20 pursuant to 28 U.S.C. § 1367(a) because the counterclaims are inextricably intertwined with the
21 underlying action. Accordingly, the Court denies Mr. Leaf's motion to dismiss under Rule
22 12(b)(1).

23 **B.    Rules 12(b)(2) and 12(b)(5)**

24 On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiffs—here,
25 Counterclaimants—bear the burden of demonstrating that the Court has personal jurisdiction over
26 Mr. Leaf. *See Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1128-
27 29 (9th Cir. 2003). Personal jurisdiction may be founded on either general jurisdiction or specific
28 jurisdiction. *Daimler AG v. Bauman*, 134 S. Ct. 746, 754-55 (2014). "For an individual, the

paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Id.* at 760 (internal quotation marks and citation omitted).

There is no dispute that Mr. Leaf is a citizen and resident of California. Thus, the Court may exercise general jurisdiction over Mr. Leaf. Before the Court can exercise its personal jurisdiction over Mr. Leaf, however, it must ensure that "the procedural requirement of service of summons" has been satisfied. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999) (noting that "one becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure.") (citing Fed. R. Civ. P. 4(a)).

Rule 12(b)(5) permits a court to dismiss an action for insufficient service of process. *See* Fed. R. Civ. P. 12(b)(5). When service is challenged, the plaintiff "bear[s] the burden of establishing that service was valid under Rule 4." *Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004). If a plaintiff does not satisfy its burden, courts have discretion to either dismiss or retain the action and quash service of process. *Rudolph v. UT Starcom, Inc.*, No. C 07-04578 SI, 2009 WL 248370, at *1 (N.D. Cal. Feb. 2, 2009) (citing *Stevens v. Sec. Pac. Nat'l Bank*, 538 F.2d 1387, 1389 (9th Cir. 1976)).

There is no dispute that Mr. Leaf was not served with the original cross-complaint—filed in May 2019—or the first amended cross-complaint—filed in August 2019—prior to Defendants' removal of the underlying action to federal court in December 2019. In such situations 28 U.S.C. § 1448 provides:

> In all cases removed from any State court to any district court of the United States in which any one or more of the defendants has not been served with process or in which the service has not been perfected prior to removal, or in which process served proves to be defective, such process or service may be completed or new process issued in the same manner as in cases originally filed in such district court.

"The Federal Rules of Civil Procedure govern service of process in federal court, *see* Fed. R. Civ. P. 4, and apply to a civil action after removal, *see* Fed. R. Civ. P. 81(c)(1)." *Whidbee v. Pierce Cty.*, 857 F.3d 1019, 1023 (9th Cir. 2017).

Counterclaimants removed the underlying action to federal court on December 4, 2019.

9

Rule 4 provides, in pertinent part:

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against the defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m). Here, Mr. Leaf was not served within 90 days of the removal of the action, assuming the 90 days began to run upon removal as opposed to when the amended cross-complaint was filed in August 2019. Indeed, based on the record before the Court, Counterclaimants did not even attempt to serve Mr. Leaf—or even notify him of the claims against him—until after April 16, 2020, nearly a year after the original complaint naming Mr. Leaf was filed and more than four months after removal of the entire action to federal court. (Dkt. No. 52-1 at ¶ 9; *see also* Dkt. No. 53-1 at ¶¶ 2-11 (declaration of Counterclaimants' counsel, Jennifer Rubin, in support of motion for alternative service that identifies attempts to serve Mr. Leaf beginning April 16, 2020).) Thus, under Rule 4(m) the cross-complaint may be dismissed without prejudice unless Counterclaimants shows good cause for its failure. *See In re Sheehan*, 253 F.3d 507, 513 (9th Cir. 2001) ("Courts have discretion under Rule 4(m), absent a showing of good cause, to extend the time for service or to dismiss the action without prejudice.").

To the extent Counterclaimants appear to rely on the Court's April 17 Order to show good cause, their reliance is misplaced. On April 15, 2020—133 days after the underlying action was removed—the Court notified the parties that it could not adjudicate Mr. Maas's motion for partial summary on the first-amended cross-complaint because (1) the cross-complaint was not before the Court, and (2) the Court did not have Mr. Leaf's consent. (*See* Dkt. No. 44.) Counterclaimants filed a response on April 16, stating, in pertinent part:

> Defendants have been unable to confirm that service of process of the First Amended Cross-Complaint was effected on Mr. Leaf. Accordingly, Defendants respectfully request that the Court allow Defendants 30 days to provide proof of service of process on Mr. Leaf.

(Dkt. No. 47 at 2.) The Court granted the request for additional time to file proof of service on April 17, 2020. (Dkt. No. 49.) The Order cannot supply the required good cause because it did

10

not grant Counterclaimants additional time to serve Mr. Leaf; it only granted them additional time to file the proof of service given that they were unable at that time to confirm that process had been effected. Indeed, Counterclaimants' April 16 response did not disclose that they had never even attempted to serve Mr. Leaf prior to their receipt of the Court's April 15 Order—not in federal court and not in state court.

Further, there is nothing in the record that suggests that prior to April 2020 Counterclaimants could not have served Mr. Leaf given that Mr. Leaf attests that Counterclaimants' prior counsel served him with four separate subpoenas in the underlying action between January 2018 and May 29, 2019. (*See* Dkt. No. 52-1 at ¶¶ 2-5.) Given the ease with which Mr. Leaf was served those subpoenas, Counterclaimants have not shown good cause for their failure to even attempt service until this Court raised the issue of the cross-complaint in April 2020.

Accordingly, the Court dismisses the cross-complaint as to Mr. Leaf under Rule 12(b)(5) because he has not been served in accordance with Rule 4, and as such, he is not a party to this action. Simply put, if the claims against Mr. Leaf were important to Counterclaimants, they would have pursued them without the Court's April 2020 inquiry into the first amended cross-complaint. They did not do so; nor have they demonstrated good cause such that the Court would quash service of process and retain the action. The dismissal is without prejudice. Because the Court dismisses the cross-complaint under Rule 12(b)(5), it need not address Mr. Leaf's Rule 12(b)(6) grounds for dismissal.

**II.     Motion for Alternative Service of Process**

Counterclaimants move for alternative service of process and assert that Mr. Leaf has evaded their diligent attempts at service since the Court's April 17, 2020 Order granting Counterclaimants' request for 30 days to provide proof of service. (Dkt. No. 53 at 2-3.) Because the Court dismisses the cross-complaint under Rule 12(b)(5), Counterclaimants' motion is moot.

**CONCLUSION**

For the reasons set forth above, the Court GRANTS IN PART Mr. Leaf's motion to dismiss. The Court dismisses the cross-complaint as to Mr. Leaf under Rule 12(b)(5) because

11

Counterclaimants have not served him with summons and the cross-complaint in accordance with Rule 4.  Dismissal is without prejudice.

The Court DENIES AS MOOT Counterclaimants' motion for alternative service of process.

This Order disposes of Docket Nos. 52 & 53.

**IT IS SO ORDERED.**

Dated: June 17, 2020

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge